ABENDROTH *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

[No. 9,974. Filed October 30, 1919. Rehearing denied January 9, 1920. Transfer denied March 16, 1920.]

1. INSURANCE.—*Actions on Policies.*—*Proof of Loss.*—*Physician's Certificate.*—*Evidence.*—The attending physician's certificate attached to a proof of loss is *ex parte*, and is competent in an action on the policy for the sole purpose of showing a compliance with the terms of the policy, and is not competent to prove any facts therein. p. 54.

2. EVIDENCE.—*Examination of Experts.*—*Hypothetical Questions.*—*Facts Not Proved Other Than by Physician's Certificate to Proof of Loss.*—*Insurance.*—Facts not otherwise proved than by appearing in the *ex parte* certificate to the proof of loss made by the attending physician, should not be included in a hypothetical question asked physicians as experts in the trial of an action on the policy. p. 54.

3. EVIDENCE.—*Examination of Experts.*—*Facts Improperly Included in Hypothetical Question.*—*Other Facts Properly in Question to Same Effect.*—*Weight of Question and Answer for Jury.*—*Insurance.*—Where, in the examination of experts, in an action on a policy, a hypothetical question improperly contained facts gleaned from the attending physician's certificate to the proof of loss, but, omitting these facts from the question, there remained other facts to the same effect, given by nonexpert witnesses, the weight to be given to the question and its answers was for the jury. p. 54.

Abendroth v. Fidelity, etc., Co. of Maryland—73 Ind. App. 50.

4. INSURANCE.—*Actions on Policies.*—*Some Evidence of Accidental Injury.*—*Sufficiency for Jury.*—*Trial.*—In an action on an accident policy claiming death of insured caused by a fall, *held* there was some evidence from which the jury might have found that there was an accidental injury, the sufficiency of which the jury must determine, and therefore that the court erred in directing a verdict for defendant. p. 54.

5. EVIDENCE.—*Narrative of Past Facts.*—*Remarks of Deceased as to Condition and Cause.*—*Insurance.*—Expressions of the deceased after arriving alone at his home, in an injured condition, the time of making which is not shown by the evidence, that "I fell," "I hurt myself," and that he was considerably shaken up, were not expressions of pain, nor part of the *res gestae*, but merely narrative of past facts and not admissible in an action on a policy to recover for death caused by an accidental fall. p. 55.

From Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Action by Mrs. Willie Abendroth against the Fidelity and Deposit Company of Maryland. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Guilford A. Deitsch, Frank G. West* and *Gentry & Campbell,* for appellant.

*Baker & Daniels* and *Ralph K. Kane,* for appellee.

NICHOLS, P. J.—This was an action by the appellant against the appellee to recover on a policy of accident insurance issued by the appellee to the appellant's husband, Dr. Franz Abendroth, who died March 23, 1913, from injuries alleged by appellant to have been received on the afternoon of March 1, 1913, there being no eyewitness to the alleged accident. After issues were formed, there was a trial by jury, at which trial at the close of appellant's evidence the court directed the jury to return a verdict for appellee, which was done, and the judgment was rendered accordingly. After a motion for a new trial, which was overruled, this appeal. The only error assigned is the action of the court in overruling the motion for a new trial. The motion specifies as error the action of the court in directing the

verdict; also the action of the court in excluding certain statements made by the assured in his home, and in the presence of his wife, soon after the alleged accident hereinafter mentioned.

In addition to averments as to the issuance of the policy and notice of the death of the assured, the complaint avers that: "On the afternoon of March 1, 1913, at or about the hour of six p. m., the said Dr. Franz Abendroth fell, striking his abdomen heavily upon the pavement, street or some other object, and that plaintiff alleges the fact to be that the said Dr. Franz Abendroth slipped on the snow or ice, or some other object, or stumbled and fell heavily on the street or sidewalk, striking his abdomen, arms and knees on the street, sidewalk, or some other object; that said fall was wholly without intention or design on the part of the said Dr. Franz Abendroth, but was wholly accidental; that as the result of said accident or fall, and directly, independently and exclusively of all other causes, the said Dr. Franz Abendroth died on March 23, 1913, as aforesaid."

In addition to exhibits 1 to 10 inclusive, which included the policy sued on, it appears by the evidence that up to the time assured left home on the morning of March 1, 1913, he was in apparently perfect health. There was never any complaint from him. He made no complaint as to feeling ill on the morning of March 1. He was a hearty eater and of a pleasant disposition, and after the meals he would usually sit with the family and read or play games. He never became intoxicated. At noontime March 1, and as late as three o'clock in the afternoon, there was no indication of pain or distress in his voice. He arrived home between five and six that afternoon, all drawn over, pale, and with his face drawn with pain. His overcoat was all covered with mud, and one of the buttons was gone with part of the cloth torn out with it, and there were spots of blood on one leg of

his drawers below the knee.. The bundles which he carried were muddy and damp. He first came into the kitchen, and then went out into the sitting room. He had his hand right upon his stomach, and at times was groaning. On going into the sitting room he lay down on a couch. He was then suffering greatly. He went to the supper table, but drank only a few sips of coffee, and then lay down again. He usually ate a hearty evening meal. He lay on his side, and was breathing as though it were an effort for him to get his breath. He would very seldom lie down, and his position was not natural at this time. While on the couch he was groaning and holding himself. He often would hit himself over the region of the stomach. On the following morning his appetite was very light compared to what it had previously been. During Sunday he was lying around the greater part of the day. His face was drawn in pain and he would groan out enough to show that he was in pain. He did not eat well Monday and left off smoking cigars. On Monday he still continued to strike himself and take a long breath, and would groan once in a while. From March 1 to March 11, he retired very much earlier than had been his usual habit, and his appetite during that time was not good. All between March 1 and March 11, he continually went down. It was necessary to work with him all night on the 11th.. During that night, he was in very much agony, and was always holding his hands on his stomach. He was a practicing physician and attended himself from March 1 to March 11. On March 11, he had a plaster across his stomach and was very much swollen. It was his upper stomach. On the night of March 11, a doctor was called. There was extreme vomiting during the night. On the morning of the 12th he was taken to the hospital and, before the ambulance came he was screaming and nothing could be done with him. An operation was

54    APPELLATE COURT OF INDIANA,

Abendroth *v.* Fidelity, etc., Co. of Maryland—73 Ind. App. 50.

performed on March 12. The incision was slightly above the navel. When the incision was made, his abdomen was very much swollen, and when the doctor made the cut it was very much as if a balloon had burst. Blood gushed out all over everything, a black watery blood. There was almost a half gallon. Death came eight days later.

In addition to this evidence, three physicians testified as experts, in answer to a hypothetical question, that in their opinion, Dr. Abendroth's condition and subsequent death resulted from some external violence, some injury. The hypothetical question propounded to these physicians contained some facts pertaining to discoveries at the operation performed on Dr. Abendroth, gleaned from the attending physician's certificate attached to the proof of loss which, being *ex parte,* were only competent for the purpose of showing a compliance with the terms of the policy. Such certificate was not competent against the appellee to prove any facts therein. 25 Cyc 941. Such facts therefore, unless otherwise proved, should not have been included in the hypothetical question. But, omitting these facts from the hypothetical question, there were still left therein other facts to the same effect, given by non-expert witnesses, who were present at the time of the operation, upon which the expert witnesses might well have based their answers. The weight to be given to the hypothetical questions and answers was for the jury. *Taylor* v. *Taylor* (1910), 174 Ind. 670, 93 N. E. 9, 12. There certainly was some evidence from which the jury might have found that there was an accidental injury, and we so hold. As to its sufficiency, the jury must determine. *Baker* v. *Bundy* (1913), 55 Ind. App. 272, 103 N. E. 668; *Thompson* v. *Mich. Mut. Life Ins. Co.* (1914), 56 Ind. App. 502, 105 N. E. 780; *Wagner* v. *Weyhe* (1905). 164 Ind. 177, 73 N. E. 89; *Budde* v. *Nat.*

NOVEMBER TERM, 1919.          55

Abendroth *v.* Fidelity, etc., Co. of Maryland—73 Ind. App. 50.

*Travelers', etc., Assn.* (1918), 184 Iowa 1219, 169 N. W. 766; *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 73 N. E. 824; *Wilkinson* v. *Aetna Life Ins. Co.* (1909), 240 Ill. 205, 88 N. E. 550, 25 L. R. A. (N. S.) 1256, 130 Am. St. 269; *Goodes* v. *Order of U. C. T.* (1913), 174 Mo. App. 330, 156 S. W. 995; *McCormack* v. *Illinois, etc., Assn.* (1907), 159 Fed. 114, 86 C. C. A. 304; *Greenlee* v. *Kansas City Casualty Co.* (1916), 192 Mo. App. 303, 182 S. W. 138; *Order of U. C. T.* v. *Simpson* (1915), (Tex. Civ. App.) 177 S. W. 169; *McEwen* v. *Occidental Life Ins. Co.* (1912), 20 Cal. App. 477, 129 Pac. 598; *Fenton* v. *Iowa State, etc., Assn.* (1908), 139 Iowa 166, 117 N. W. 251; *Caldwell* v. *Iowa State, etc., Assn.* (1912), 156 Iowa 327, 136 N. W. 678; *General Accident, etc., Corp.* v. *Meredith* (1910), 141 Ky. 92, 132 S. W. 191.

Upon entering his home on the evening of March 1, 1913, how long after the accident it is impossible to tell, Dr. Abendroth said "I fell," and afterwards, "I hurt myself," and again that he was considerably shaken up. These expressions were offered in evidence, but, on objection of appellee, they were excluded, and upon this ruling appellant predicates error. There is much discussion as to the admissibility of this character of evidence, but we think that the weight of authorities is against its admissibility. The case of *Parker* v. *State* (1894), 136 Ind. 284, 35 N. E. 1105, cited by the appellant, decides the question against the appellant. We hold that such expressions are not expressions of pain, nor a part of the *res gestae.* They were merely narrative of past facts, and not admissible.

For error of the court in directing the verdict, the judgment is reversed, with instructions to the trial court to grant a new trial.